IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOSE RAUL RENYA, | § | |
| #02441776, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | No. 3:23-cv-00213-N (BT) |
| | § | |
| DIRECTOR, TDCJ-CID, | § | |
| Respondent. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Jose Raul Reyna, a Texas prisoner proceeding *pro se*, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. ECF No. 3. For the reasons below, the Court should DENY Reyna's habeas application.

**Background**

On December 8, 2015, Reyna pleaded guilty to unlawful possession of a firearm by a felon pursuant to a plea agreement in which he agreed to deferred adjudication requiring him to spend three years under community supervision. *See State v. Reyna*, F-1518250-J (Crim. Dist. Ct. #3, Dallas County, Texas, Dec. 8, 2015). Reyna did not appeal the deferred adjudication order.

The State later moved to revoke Reyna's community supervision, alleging that Reyna committed two new offenses: (1) driving while intoxicated (DWI), and (2) unlawful possession of a firearm. *See* ECF No. 24-1 at 56, 61. On March 27, 2020, after a contested hearing, the trial court determined the allegations to be

true and sentenced Reyna to 10 years' imprisonment. *State v. Reyna*, F-1518250-J (Crim. Dist. Ct. #3, Dallas County, Texas, Mar. 27, 2020).

Reyna appealed the judgment adjudicating guilt. *Reyna v. State*, 2021 WL 4932735 (Tex. App.—Dallas, Oct. 22, 2021). On October 22, 2021, the appellate court affirmed the judgment. *See id.* Reyna filed a state habeas application. *See* ECF No. 20-9. But the Texas Court of Criminal Appeals (CCA) denied his application "without written order" on December 21, 2022. *Ex parte Reyna*, WR-91,840-02, (Tex. Crim. App. May 21, 2022).

Reyna then filed an initial federal habeas petition on January 27, 2023, and, in compliance with a Court order, filed an amended petition on March 28, 2023. ECF No. 8.[1] He makes the following claims:

1. He was denied effective assistance of counsel because his attorney failed to object to the breach of the plea agreement;

2. He was denied effective assistance of appellate counsel because his attorney failed to appeal his range of punishment;

3. The trial court erred by (a) refusing to appoint a new attorney for Reyna after he fired and stopped paying his original counsel, forcing him to proceed pro se or with his counsel acting in a pro bono capacity; (b) denying Reyna the right to present evidence; and (c) making an improper comment showing bias; and

4. Insufficient evidence supported the revocation of his community supervision.

---

[1] The amended petition is the operative pleading. *See King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994). To the extent that Reyna raises new claims or legal arguments in his reply brief, they are not addressed. Under the orders of the court and the rules governing habeas actions, a petitioner cannot raise new claims in reply to the respondent's answer. *See, e.g., Overstreet v. Davis*, 2019 WL 1746294, at *3, n. 2 (N.D. Tex. Apr. 18, 2019).

ECF No. 8 at 6-7.

The State filed a response, arguing that any challenges to the deferred adjudication order are untimely and any challenges to the judgment adjudicating guilt are meritless. ECF No. 20. Reyna filed a reply. ECF No. 22.

**Legal Standards**

A. Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) establishes a one-year statute of limitations for federal habeas proceedings. *See* Pub. L. 104-132, 110 Stat. 1214 (1996). Under the statute, the limitations period runs from the latest of:

> (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking direct review;
>
> (B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

The time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is

pending does not count toward any period of limitation. *Id.* at § 2244(d)(d). But state habeas applications filed after the expiration of the limitation period do not toll the limitation period. *See Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000).

B. Relitigation Bar

As to any timely claims that the CCA denied on the merits, Reyna must overcome AEDPA's relitigation bar to obtain federal relief. *See*, *e.g.*, *Neal v. Vannoy*, 78 F. 4th 775, 782 (5th Cir. 2023) (citations omitted). Under 28 U.S.C. § 2254(d):

(d)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"This intentionally difficult standard stops just short of imposing a complete bar on federal court relitigation of claims already rejected in the state court proceeding." *Isidro Ramos, III v. Dir., TDCJ-CID*, 2024 WL 3614675, at *3 (W.D. Tex. July 31, 2024) (citing *Harrington v. Richter*, 562 U.S. 86, 102 (2011)) (citing, in turn, *Felker v. Turpin*, 518 U.S. 651, 664 (1996)).

4

Under the "contrary to" clause, a federal habeas court may grant the writ of habeas corpus if the state court arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or if the state court decides a case differently from the United States Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 380-84 (2000). Under the "unreasonable application" clause, a federal court may grant a writ of habeas corpus if the state court identifies the correct governing legal principle from the United States Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *Id.*

A determination of a factual issue by a state court is presumed to be correct, and that presumption may be overcome only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The presumption of correctness applies to both express and implied factual findings. *Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004). Absent express factual findings, a federal court may imply factual findings consistent with the state court's disposition. *Marshall v. Lonberger*, 459 U.S. 422, 433 (1983).

At bottom, as long as "fairminded jurists could disagree" on the correctness of the state court's decision, a state court determination that a claim lacks merit precludes federal habeas relief. *Richter*, 562 U.S. at 101 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "In other words, to obtain federal habeas relief on a claim previously adjudicated on the merits in state court, petitioner must show that the state court's ruling was 'so lacking in justification that there was an

error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Ramos, III*, 2024 WL 3614675, at *3 (citing *Richter*, 562 U.S. at 103; *Bobby v. Dixon*, 565 U.S. 23, 24 (2011)).

And "even if a petitioner can shoehorn his claim into one of the relitigation bar's exceptions, he 'still must show, on de novo review, that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Senn v. Lumpkin*, No. 23-10661, 2024 WL 4100322, at *4 (5th Cir. Sept. 6, 2024) (citing *Langley v. Prince*, 926 F.3d 145, 156 (5th Cir. 2019) (en banc)) (quoting, in turn, *Salts v. Epps*, 676 F.3d 468, 480 (5th Cir. 2012); 28 U.S.C. § 2254(a)) (quotation omitted). Part of that analysis entails asking whether the petitioner has shown that any constitutional error had a "substantial and injurious effect or influence" on the verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also Brown v. Davenport*, 596 U.S. 118, 134 (2022) ("Today, then, a federal court must *deny* relief to a state habeas petitioner who fails to satisfy this Court's equitable precedents or AEDPA. But to *grant* relief, a court must find that the petitioner has cleared both [*Brecht* and the AEDPA].") (emphasis in original).

### Analysis

1. <u>Reyna's ineffective assistance of counsel (IAC) claims are time-barred or meritless.</u>

Reyna claims that his trial counsel was ineffective for not objecting to the breach of his plea agreement and that his appellate counsel was ineffective for not raising the "correct issue that was reviewable." ECF No. 8 at 6.

To succeed on an IAC claim, a petitioner must show "counsel's representation fell below an objective standard of reasonableness," with reasonableness judged under professional norms prevailing at the time counsel rendered assistance. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). The standard requires the reviewing court to give great deference to counsel's performance, strongly presuming counsel exercised reasonable professional judgment. *Id.* at 689. The right to counsel does not require errorless counsel; instead, a criminal defendant is only entitled to reasonably effective assistance. *Murray v. Maggio*, 736 F.2d 279, 281-82 (5th Cir. 1984); *Boyd v. Estelle*, 661 F.2d 388, 389 (5th Cir. 1981).

Additionally, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. The petitioner must "affirmatively prove," not just allege, prejudice. *Id.* at 693. If he fails to prove prejudice, the court need not address counsel's performance. *Id.* at 697.

And, on federal habeas review, the Court's analysis of IAC claims is even more deferential. When the state court has adjudicated the claim on the merits, a federal court must review a petitioner's claims under the "doubly deferential" standards of both *Strickland* and § 2254(d). *See Woods v. Etherton*, 578 U.S. 113 (2016) (citing *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)). "The pivotal question is whether the state court's application of the *Strickland* standard was

7

unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Richter*, 562 U.S. at 101. Federal courts consider IAC claims mixed questions of law and fact; and so must analyze them under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010).

A. Failure to Object to Breach of Plea Agreement in 2015

Reyna signed a plea agreement in 2015. ECF No. 20-13. He pleaded guilty to unlawful possession of a firearm by a felon. *Id.*; *see also* ECF No. 20-5 at 2. The offense of conviction is a violation of Texas Penal Code § 46.04(a), which is a third degree felony that carries a punishment of 2-10 years imprisonment. Tex. Penal Code § 46.04(e) ("An offense under Subsection (a) is a felony of the third degree."); Tex. Penal Code § 12.34 ("An individual adjudged guilty of a felony of the third degree shall be punished by imprisonment in the Texas Department of Criminal Justice for any term of not more than 10 years or less than 2 years."). Reyna's order of deferred adjudication correctly reflected that the offense of conviction was a third degree felony:

| Offense: | | |
|---|---|---|
| UNLAWFUL POSSESSION OF A FIREARM BY A FELON | | |
| Charging Instrument: | Statute for Offense: | |
| INDICTMENT | 46.04 Penal Code | |
| Date of Offense: | | |
| 7/31/2015 | | |
| Degree of Offense: | Plea to Offense: | Findings on Deadly Weapon: |
| 3RD DEGREE FELONY | GUILTY | N/A |
| Terms of Plea Bargain: | | |
| 3 YEARS DEFERRED PROBATION; $1,500 FINE | | |

ECF No. 20-5 at 2.

But Reyna contends that he agreed to plead guilty to a state jail felony with a punishment range of only 6 months to 2 years. In support of his argument, he points to an apparent ambiguity in the plea agreement: in the section that sets forth the punishment range, there is an "X" next to state jail felony, but there is also another mark beside "3rd degree felony."

**COURT'S ADMONITIONS TO DEFENDANT**

You are charged with the offense of: _UNL Poss Firearm by Felon_
The punishment range for the offense charged is:

- [ ] 1st Degree Felony, 5-99 years or Life and an optional fine not to exceed $10,000.00
- [ ] 2nd Degree Felony, 2-20 years confinement and an optional fine not to exceed $10,000.00
- [x] 3rd Degree Felony, 2-10 years confinement and an optional fine not to exceed $10,000.00
- [x] State Jail Felony, 180 days – 2 years State Jail and an optional fine not to exceed $10,000.00
- [ ] _____

ECF No. 20-13 at 2.

The Court agrees with the State that, to the extent Reyna is claiming that his attorney should have objected to the breach of the plea agreement in 2015 when the order of deferred adjudication was entered, the claim is untimely.

In most cases—including Reyna's—the limitations period begins to run when the judgment becomes final after direct appeal or the time for seeking such review has expired. 28 U.S.C. § 2244(d)(1)(A). A Texas order of deferred adjudication is a final judgment for purposes of § 2244(d). *Caldwell v. Dretke*, 429 F.3d 521, 528-29 (5th Cir. 2005). A notice of appeal must be filed within 30 days after the date the sentence is imposed. TEX. R. APP. PROC. 26.2(a)(1).

Here, Reyna did not directly appeal the 2015 order of deferred adjudication, so it became final for purposes of § 2244(d) on January 7, 2016—30 days after it was entered. That means that any federal application challenging the deferred adjudication order had to be filed by January 9, 2017.[2] But Reyna did not file a federal habeas petition until early 2023, so any challenge to the 2015 order of deferred adjudication is untimely.[3]

Reyna claims that he is entitled to equitable tolling. AEDPA's one-year limitation period is subject to equitable tolling in "rare and exceptional cases." *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998); *see also Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir.1999) (asserting that courts must "examine each case on its facts to determine whether it presents sufficiently 'rare and exceptional circumstances' to justify equitable tolling") (quoting *Davis*, 158 F.3d at 811). The Fifth Circuit has held that "[e]quitable tolling applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir.1999), *abrogated on other grounds by Causey v. Cain*, 450 F.3d 601, 605-06 (5th Cir. 2006). Additionally, "'[e]quity is not intended for those who sleep on their rights.'" *Fisher v. Johnson*, 174 F.3d 710, 715 (5th Cir. 1999) (citation omitted). Rather, "'[e]quitable tolling is appropriate where, despite all due

---

[2] January 7, 2017 was a Saturday.
[3] Reyna did file a state habeas application in July 2022, but this did not toll the federal limitations period because it was filed after the limitations period expired. *See Scott*, 227 F.3d at 263.

diligence, a plaintiff is unable to discover essential information bearing on the existence of his claim.'" *Id.* at 715 n. 14 (quoting *Pacheco v. Rice*, 966 F.2d 904, 906-07 (5th Cir. 1992)). A petitioner bears the burden of proof to show he is entitled to equitable tolling. *Phillips v. Donnelly*, 216 F.3d 508, 511 (5th Cir. 2000).

Reyna argues that he is entitled to equitable tolling because his attorney and the attorney for the State "actively misled" him into believing he was pleading guilty to a state jail felony. ECF No. 22 at 1. He notes that the State agreed to drop an enhancement for a prior aggravated robbery conviction, and he believed when he pleaded guilty that this would result in the diminishment of his conviction from a third-degree felony to a state jail felony. ECF No. 22 at 2. He notes the ambiguous markings on the plea agreement itself, which he allegedly relied on in believing that he pleaded guilty to a state jail felony, as well as the fact that the judge at the plea hearing said that he would abide by the plea agreement. ECF No. 22 at 2.

But even accepting all of that as true, any belief Reyna had that he pleaded guilty to a state jail felony dissipated—or should have dissipated—when the court accepted his plea and issued its order of deferred adjudication on December 8, 2015. The order of deferred adjudication states that the offense of conviction is a third-degree felony. ECF No. 20-5 at 2. And the judge admonished Reyna at the plea hearing that the range of punishment for the offense was between two and ten years imprisonment. ECF No. 24-19 at 101 (THE COURT: "In this case you were charged by indictment with the felony offense of unlawful possession of a firearm by a felon. The range of punishment, sir, for this offense is anywhere from two

years to ten years in the Texas Department of Criminal Justice and up to a $10,000

15 fine. . . . Do you understand, sir, exactly what you're being charged with in this

case and the range of punishment? THE DEFENDANT: Yes, sir."). Thus, with

reasonable diligence, Reyna could have discovered the basis for his breach-of-plea-

agreement claim by early December 2015—over seven years before he filed this

action—when it was clear he pleaded guilty to a third-degree felony.

In sum, because Reyna has not shown that he acted with the requisite

diligence throughout the period that he seeks to toll, he is not entitled to equitable

tolling on an IAC claim that his attorney failed to object to the breach of the plea

agreement in 2015, and this claim—and any other claim attacking the 2015 order

of deferred adjudication—is untimely. *See Smith v. Vannoy*, 848 F. App'x 624,

628-29 (5th Cir. 2021) (refusing to apply equitable tolling where the petitioner

failed to show that he "acted with reasonable diligence throughout the period he

seeks to toll") (citing *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000)).

B.  Failure to Object to Alleged Breach of Plea Agreement in 2020

To the extent Reyna is claiming that his attorney was ineffective for not

objecting to an alleged breach of the plea agreement in 2020 during the revocation

proceedings, the claim is meritless.

First, there is no absolute right to counsel during probation revocation

hearings. *Gagnon v. Scarpelli*, 411 U.S. 778, 790 (1973). The need for counsel at a

probation revocation proceeding is made on a case-by-case basis. *Id.* Counsel is

constitutionally required only if the probationer makes a colorable claim (1) that

he did not commit the alleged violations or (2) that there are justifying or mitigating circumstances which make revocation inappropriate and these circumstances are difficult or complex to develop or present. *Id.*

Reyna does not argue that there are justifying or mitigating circumstances making revocation inappropriate. He does argue that he did not commit the alleged violation leading to the revocation of his community supervision, but, as explained later, that claim is meritless, or, at the least, the CCA could have found that it was. Thus, the CCA could have reasonably concluded that Reyna was not entitled to counsel at his revocation proceeding. And a "viable ineffective assistance of counsel claim exists for Section 2254(d) purposes only if the Supreme Court has clearly established that the Sixth Amendment gives rise to the assistance of counsel in connection with the proceeding at issue." *Harrison v. Osuji,* 2023 WL 8088071, at *3 (E.D. Cal. Nov. 21, 2023) (citing *Coleman v. Thompson,* 501 U.S. 722, 752 (1991)).

Second, Reyna fails to show ineffectiveness even assuming he had a constitutional right to counsel during the revocation proceedings. Reyna does not show that any objection to the supposed breach of the plea agreement would have had merit. To the contrary, when Reyna himself tried to make such an objection during the revocation proceedings, the trial court rejected it, finding that, no matter what Reyna thought the plea agreement said, he pleaded guilty to a third-degree felony, which carries a statutory punishment of two to ten years imprisonment. ECF No. 20-15 at 1. Reyna's trial counsel could have reasonably

13

decided that it would have been futile to object to the alleged breach of the plea agreement, and counsel need not make futile objections. *See*, *e.g.*, *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) (citing *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984) (per curiam)).

At bottom, the CCA did not unreasonably apply clearly established Supreme Court precedent in rejecting Reyna's claim that his trial counsel was ineffective for not objecting to an alleged breach of the plea agreement during the revocation proceedings, and Reyna is not entitled to relief on this claim.

C.  Failure of Appellate Counsel to Appeal Range of Punishment

Reyna claims that his appellate counsel should have objected to the range of punishment, which he contends was greater than the charge to which he pleaded guilty. ECF No. 8 at 6.

But Reyna's appellate counsel *did* make this argument, and the appellate court found that it lacked jurisdiction over it because Reyna "did not file an appeal challenging the range of punishment of the pled-to offense at the time community supervision was imposed. Rather, he waited until March 17, 2020, and filed a pro se 'motion to withdraw guilty plea,'" and "by that time, it was too late to raise the issue." *Reyna*, 2021 WL 4932735, at *3 (citing *Webb v. State*, No. 05-15-00478-CR, 2015 WL 7720469, at *1 (Tex. App.—Dallas Nov. 30, 2015, no pet.) (mem. op., not designated for publication) ("A defendant placed on deferred adjudication community supervision may raise issues relating to the original plea proceeding only in appeals taken when deferred adjudication community supervision is first

14

imposed.") (citing, in turn, *Manuel v. State*, 994 S.W.2d 658, 661-62 (Tex. Crim. App. 1999)). The CCA therefore did not unreasonably apply *Strickland* in rejecting this claim, and Reyna is not entitled to relief on it.

2. <u>The CCA reasonably rejected Reyna's trial court error claims</u>.

Reyna contends that the trial court erred during the revocation proceedings by (1) refusing to appoint a new attorney for Reyna after he fired and stopped paying his original counsel, forcing him to proceed *pro se* or with his counsel acting in a pro bono capacity; (2) denying him the right to present evidence; and (3) making improper comments indicating bias. ECF No. 8 at 7.

"It is well-settled in the Fifth Circuit that a federal court "[does] not sit as a super state supreme court to review error under state law.'" *Reedy v. Lumpkin*, 2024 WL 3447530, at *9 (W.D. Tex. July 16, 2024) (citing *Bridge v. Lynaugh*, 838 F.2d 770, 772 (5th Cir. 1988)). A trial court error only justifies federal habeas relief if it was "so extreme that it constitutes a denial of fundamental fairness under the Due Process Clause." *Bridge*, 838 F.2d at 772. To obtain federal habeas relief, Reyna must show that the trial court's alleged error had a "substantial and injurious effect or influence in determining the jury's verdict." *Fry v. Pliler*, 551 U.S. 112, 121-22 (2007) (citing *Brecht*, 507 U.S. at 637).

A.  Refusal to appoint a different attorney

Reyna claims that the trial court erred in making him proceed either *pro se* or with his attorney acting in a pro bono capacity after he fired his attorney and refused to continue paying him.

The record belies this claim. The trial court was not presented with whether Reyna could get a new attorney because Reyna withdrew his motion to dismiss counsel. *See* ECF No. 24-6 at 9.

Even if the trial court forced Reyna to proceed either *pro se* or with his initial attorney, this would not have violated clearly established Supreme Court precedent because, as explained, Reyna fails to show that he was entitled to counsel in the revocation proceedings, or, at the least, the CCA could have reasonably come to that conclusion. Reyna fails to show that the CCA acted unreasonably in denying this claim, and he is not entitled to relief on it.

B.  Video Dash Cam Evidence

Reyna claims that the trial court erred by refusing to allow him to play the entirety of video dash cam evidence of the arrests that led to the revocation proceedings. The trial court allowed Reyna to present some of the video during his case in chief but appears to have stopped the video before its conclusion. *See* ECF No. 24-6 at 113 (THE COURT: "I've seen enough. We need to proceed."). Reyna claims that the dash cam footage would have revealed inconsistent statements of the officers that could have been used for impeachment and would have shown that his eyes were not "bloodshot" or "heavy" as the officer testified. He also contends that the video of the unlawful possession by a felon arrest would have shown that his license plate was not obscured—the reason the officer gave for stopping him in the first place.

Reyna fails to show an error of a constitutional magnitude under the Supreme Court's harmless error standard. *See Brecht*, 507 U.S. at 637. His allegations about what the videos would have shown are conclusory and insufficient to prove that the video evidence would have led to a different outcome. This is especially true here because the State only needed to prove that Reyna violated a term of his community supervision by a preponderance of the evidence. *See Cobb v. State*, 851 S.W.2d 871, 873 (Tex. Crim. App. 1993). As shown below, there was ample evidence to support the finding that Reyna violated the terms of his community supervision, and Reyna fails to show that the video dash cam evidence would have changed that, or, at the least, the CCA could have reasonably come to that conclusion in denying this claim.

C.  Improper Comment Showing Bias

Reyna claims that the trial judge was biased because she did not allow him to play the full video dash cam footage, stating that she had "seen enough" and "we need to proceed." ECF No. 8 at 7.

"Stated succinctly, the cornerstone of the American judicial system is the right to a fair and impartial process." *Bigby v. Dretke*, 402 F.3d 551, 558 (5th Cir. 2005) (citing *Bracy v. Gramley*, 520 U.S. 899 (1997)). "Therefore, any judicial officer incapable of presiding in such a manner violates the due process rights of the party who suffers the resulting effects of that judicial officer's bias." *Wilbanks v. Dir. TDCJ-CID*, 2022 WL 18946236, at *12 (E.D. Tex. Nov. 17, 2022), *rec. accepted* 2023 WL 2387207 (E.D. Tex. Mar. 6, 2023) (citation omitted). Claims of

judicial bias are difficult to prove on federal habeas review because the Supreme Court has determined "that what degree or kind of interest is sufficient to disqualify a judge from sitting cannot be defined with precision." *Buntion v. Quarterman*, 524 F.3d 664, 672 (5th Cir. 2008) (citation omitted) (quoting *Aetna Life Ins. v. Lavoie*, 475 U.S. 813, 822 (1986)) (internal quotation omitted). The Due Process Clause sets "a constitutional floor, not a uniform standard." *Bracy*, 520 U.S. at 904 (citation omitted).

Here, the only evidence of bias that Reyna relies upon is an adverse judicial ruling or attempt at courtroom administration. But "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555 (1994). Judicial opinions will only support an actual bias claim if they reveal favoritism or antagonism such that fair judgment is impossible. *Id.* Further, "[a] judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune [from establishing a bias]." *Id.* at 55. Accordingly, the trial judge's decision not to watch the entirety of the video footage did not reveal favoritism or antagonism—only a desire to proceed expeditiously.

The CCA reasonably rejected this claim, and Reyna is not entitled to relief on it.

3. <u>There was sufficient evidence to revoke Reyna's community supervision</u>.

In his final claim, Reyna complains that the trial court abused its discretion because there was insufficient evidence to revoke his community supervision. ECF No. 8 at 7.

Although a probation revocation proceeding must comport with the requirements of due process, it is not a criminal proceeding. *Minnesota v. Murphy*, 465 U.S. 420, 435 n.7 (1984) (citing *Gagnon*, 411 U.S. at 782); *Bradley v. State*, 564 S.W.2d 727, 729 (Tex. Crim. App. 1978). To warrant revocation, the State need only establish by a preponderance of the evidence that a defendant violated the terms of his probation. *See Cobb*, 851 S.W.2d at 873 . The revocation of probation complies with the Fourteenth Amendment Due Process Clause if it is not "totally devoid" of evidentiary support. *Douglas v. Buder*, 412 U.S. 430, 432 (1973) (per curiam).

Here, the State's motion to revoke and proceed with adjudication of guilt was predicated on allegations that Reyna committed two new crimes: DWI and unlawful possession of a firearm.

As to the DWI allegation, the arresting officer testified that he observed Reyna driving more than 100 miles per hour at 4 a.m. ECF No. 24-6 at 32. Reyna at first refused to roll down his window. Reyna was mumbling, he smelled of alcohol, and his eyes were bloodshot and heavy. ECF No. 24-6 at 33-34. The officer testified that he performed a horizontal gaze nystagmus test, and, in his twenty years of experience, Reyna's behavior and symptoms were consistent with

impairment and a "loss of normal use of mental and physical functions." ECF No. 24-6 at 36-43.

The officer's testimony is "some evidence" in support of the finding that Reyna committed DWI while on deferred-adjudication community supervision. *See* Tex. Penal Code § 49.04(a) ("A person commits an offense if the person is intoxicated while operating a motor vehicle in a public place."). At the least, the CCA could have reasonably reached that conclusion, precluding federal habeas relief on this claim.

As to the new unlawful possession of a firearm allegation, the arresting officer testified that he pulled Reyna over in Leon County for driving with an obscured license plate. ECF No. 24-6 at 59. He smelled raw marijuana, and Reyna admitted possessing a smoked marijuana joint. ECF No. 24-6 at 62. The officer received confirmation from dispatch that Reyna was a gang member, and Reyna confirmed that he had a criminal history. ECF No. 24-6 at 65-67. Reyna became nervous when the officer asked whether there were weapons in the vehicle. ECF No. 24-6 at 72. The officer then searched the car, found a marijuana joint, and noticed spent shell casings in the windshield cowling outside the vehicle. ECF No. 24-6 at 74-75. The officer noticed that the glove compartment was locked, but the officer pried it open and discovered a 9mm pistol with bullets matching the caliber, color, and brand of the casings in the windshield cowling. ECF No. 24-6 at 77. The State presented photographs taken by the officer of the casings found in the windshield and the pistol. ECF No. 24-6 at 77-83; ECF No. 24-7 at 17-22.

Again, the officer's testimony constitutes at least "some evidence" that Reyna committed unlawful possession of a firearm while on deferred-adjudication community supervision—or at the least, the CCA could have reasonably reached that conclusion—and Reyna is not entitled to habeas relief on this claim. *See* TEX. PENAL CODE § 46.04(a) ("(a) A person who has been convicted of a felony commits an offense if he possesses a firearm: (1) after conviction and before the fifth anniversary of the person's release from confinement following conviction of the felony or the person's release from supervision under community supervision, parole, or mandatory supervision, whichever date is later[.]").

Reyna responds that both arrests were tainted by Fourth Amendment violations. *See* ECF No. 22 at 8-9. But the Supreme Court has never held that the exclusionary rule applies in probation revocation proceedings. And the Fifth Circuit has held that the rule does not apply in such proceedings absent police harassment. *See United States v. Montez*, 952 F.2d 854, 857 (5th Cir. 1992); *see also United States v. Brown*, 488 F.2d 94, 95 (5th Cir. 1973). So, any Fourth Amendment violations would not have led to the exclusion of evidence against Reyna, or, at the least, the CCA could have reasonably reached that conclusion in rejecting this claim.

The CCA reasonably rejected Reyna's insufficiency-of-evidence claim, and he is not entitled to federal habeas relief on it.

## Recommendation

The Court should deny Jose Raul Reyna's federal habeas application.

Dated: October 24, 2024.

REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n, 79 F.3d 1415, 1417 (5th Cir. 1996)*.